Good morning, Your Honors. Before I start, I just want to make sure there's – I had provided the clerk with a four-page, some illustrative exhibits that I'd like to refer to in my argument. One minute, please. We don't have it. Thank you. Whenever you're ready, Your Honor. Is this declaration in the record? The last two pages – the last three pages are part of the record. The first two are demonstrative exhibits that I prepared on my own. Were they used in the district court? The final three pages? Demonstrative evidence. They were not. So if the – To tell you the truth, I've never found any of these things at all helpful. It seems to me you can tell us verbally whatever you want to tell us and not raise any issues. But that's fine. The point here is and the reason that we're here is that we submit that the district court erred in finding that there was no harm in fact or no damages. And the principle of our argument is simple, that a group insurance policy has certain legal elements in order to be formed. Kai Weaver paid premium for a group life insurance policy. The Respondents, Aetna and Western, did not meet the legal requirements for forming a group insurance policy. Therefore, the damage is the premium she paid. And the premise of that is as a consumer, you don't buy a claim. You buy an insurance policy. Yes, but the question is whether – and to me, the district court statement, therefore, that until you have a claim you have no injury seems an overstatement. But on the other hand, if you have – if there's no reason to think that this sort of technical problem affected the economic value of the policy or the likelihood of getting paid, then I don't know what your problem is. Well, I think there lies in the issue, that we submitted certainly in our complaint sufficient evidence to demonstrate that. What evidence? I mean, you submitted evidence to demonstrate that they hadn't met the details of Nevada law, but you didn't have any evidence that anybody cared or that anything was going to happen as a result. Well, we submitted the basis that there was no group insurance policy that was legally valid. So to me, the harm flows from that. But in addition to that, there were allegations regarding the commission payouts. And remember, I mean, the crux of the issue here is in group insurance, you have a group policyholder. In this case, there was no group policyholder to whom was obligated to act on behalf of the individual insured. Other than the violations of Nevada law, and it's hard to tell whether they're technical violations or significant violations, but say that we assume that there were violations of Nevada law, other than that, is that the crux of your injury or was there some other injury, just the violation of Nevada law as to how the insurance was structured? Well, the crux of the injury goes back to the question of legal formation. But just answering that question about was there something other than the noncompliance with law that was a problem, that was an injury? Was there anything else? Well, no, because the basis of the claim is the violation of the law. But I would say that it isn't just the Nevada law. It would be the common law on formation. And that the premise of our argument is as a consumer, you buy a contract, and you didn't get the contract you bargained for. Now, what do we do about the fact that Nevada says, you know, only we get to enforce these violations? Well, I think that's a — I would like to address that, because I think that the Respondents have vastly overstated what Nevada law stands for. And if you read the Thorpe case, and I would ask the Court to read the statute that Thorpe cites to, and it's — in that case, it's a very unique case. There was a statute in Nevada that said, if you, an insurance company, don't pay a medical bill timely, this is the interest rate we are going to charge. Board, no correlation to actual damages. And, in fact, if you read the statute, it really is a penalty. So you have a statute that created, in effect, the remedy. And what Thorpe says, and Bald and Otto both say, is where the statute creates the remedy, then you look at exclusive jurisdiction. We cited in our brief to Nevada Power, which is factually very similar to this case, where in Nevada Power, the plaintiffs alleged that certain public utility commission regulations were violated, and those regulations led to damage. So clearly, you had exclusive jurisdiction of the public utility commission. But here, the only damage that you're alleging is the violation of State law. In other words, you're not alleging any damage that is in any way separate from the fact that there was a violation of State law. But the damage flows from that violation. In other words, for example, the commissions. That's the damage that ultimately flows to Mrs. Weaver. But that's different from the case that you're citing, because in that case, I assume what happened was they violated State law, and as a result, people had to pay more or they were hurt or something happened. Well, and that's that. Therein lies that is our allegation. But here, nothing happened except the State law was violated. No, because in our allegations, one of our damage claims is we paid premium that was too high effectively because the agent was self-serving himself on the commission. So, I mean, that is true. We don't have a factual record before you because we weren't allowed to do discovery. But that is in part the damage that we allege. But where is that in the complaint? I don't have the complaint in front of me. I apologize. But that would be. That's not good. That would be. And ordinarily, when people argue, if you want us to look at things, you have to tell us what to look at. Well, I apologize, Your Honor. That's why. I was anticipating looking at the data I gave you. All right. Well, where is it in the data you gave us? It's not. I apologize. So it's not. But within the paragraphs for the claims for relief, the commissions that were paid, that is part of the damage. My primary argument is. The reason that the premiums were too high is because there was a violation of law with respect to the policy. I mean, it all seems to get back to really the only thing that's wrong is the violations of law. The claim flows from the violation of the law. The law is in the common law and the Nevada revised statutes. I don't dispute that. I mean, that is a fact. But that doesn't it doesn't lead to the conclusion that was raised in Thor principally because Thor does there's no remedy available for the consumers in this instance through an exclusive jurisdiction premise. If you're representing essentially that there is some other claim here of self-dealing. It didn't appear anywhere in the briefs and I can't find it. So I don't know what I'm supposed to do with it because you can't find it either. It's this notion that there was a commissioner who was sold with somebody who was on the commission who was selling the policies. Well, the premise and the allegations. I apologize. I didn't. I wasn't planning on referencing the complaints. Why don't have it in front of me? But the the allegation in the complaint is that there was a commission structure that violated Nevada law. There was a commission. Oh, not. Oh, I see that the way they pay the commission. Not that this person was on the. I thought you were saying it was a self-dealing problem. You're not really. No, I apologize. I don't mean to. And with that, I mean, I would just say that the premise of our argument comes back to the consumer buys an insurance policy. If the policy doesn't exist, I submit that there's damage there flowing from the fact that you didn't. It does exist. I mean, in the sense that as far as we know, the insurance company was prepared to honor all claims and simply hadn't filed their papers. Right. I mean, is that essentially under what basis? I mean, you have you. I mean, I'm sure that this court over time and time again has said the contract controls. And when a consumer comes in and says, I didn't read the contract, you say that I'm sorry, you had to read the contract. And there lies in the question. What did Mrs. Weaver receive? And was there an effective meeting of the minds? Because she never got that contract. And I think that's what's significant. I mean, it's easy for the insurance company to say now what we intended to pay the claims. Well, under what conditions? I mean, that I guess is the essence. And I would, you know, with that, reserve my 30 seconds. Thank you very much. Counsel. May it please the Court. Richard Dorn on behalf of the Aetna Life Insurance Company. I'm your Honor. In response to the last question that you asked about where is there this discussion about premiums, actually at paragraph 34 of the complaint, age 62 of the record excerpts, there is an allegation that when Aetna became involved in the program, commissions were raised to 20 percent of premium. But nowhere in the complaint does it say that that caused an overall increase of premium or that that caused any detriment or burden on the person applying for or paying for the insurance. There is no allegation in the complaint of any injury to Ms. Weaver as a result of this program. Can you tell me exactly what your standing argument is? To me, what the district court said can't be right. That as long as there was no claim rejected, she doesn't have standing. That can't be right. I mean, if somebody has a policy in their hand that you know is worthless because there's been evidence because the company went bankrupt or because they have a pattern of not paying claims and she says, I know I'm not going to get paid if anything happens. When you buy insurance, what you're paying is buying a security. You're not buying a particular claim. So that has to be an overstatement. Do you agree with that? Well, Your Honor, in part, I agree with it. I think if it were a Ponzi scheme, if it was... That's exactly the example I was looking for. If it were a fraud from day one where someone in a trench coat on a corner offered to pay for your medical care if you paid them $50 a month and then they took that $50, put it in their pocket and went and bought, you know, played poker and bought beer, I think that may not require a claim to be made and denied. Because she doesn't have what she bought, which is something to cover her risks. But that is not what we have here, Your Honor. So why not? There is no allegation in the complaint that there was not life insurance coverage. There is no allegation in the complaint that Ms. Weaver did not or made a claim and had it denied or that Ms. Weaver disputed or was unhappy with the scope of the coverage provided by Aetna. There's no allegation that she felt she overpaid for the for the coverage provided by Aetna. The Ponzi scheme also? I mean, until you die, right, you don't have a claim. So you're hoping that the risk is covered, but you don't know until you're dead. Your Honor, here we have an insurance contract. It's before the court in the excerpts of record provided by Aetna. You have a ---- His representation is she never got an insurance contract. His representation is she never received a copy of the insurance contract, not that she never received insurance coverage. And there's nothing in the complaint that says that she considered that to be any sort of injury or damage or any sort of burden. And there's also no dispute that there was coverage. For example, at paragraph 42 of the complaint, she excludes from her class definition all persons who received any payment from Western or Aetna arising from a claim for insurance benefits. Now, while I agree, Your Honor, in the extreme, out in the Ponzi scheme end of the And I don't know if it needs to be a Ponzi scheme. And there was a case ---- there's a ---- the case in which someone alleged that this insurance company just had a pattern of not paying, and they was ---- that was held not to have standing. That doesn't sound right to me, actually. Well, Your Honor, I think there, again, for example, impressed communications out of the Central District of California is a perfect example of that scenario, where you had a plaintiff that pled fraudulent inducement, that they had relied on misrepresentations in signing on to an insurance policy, and after learning that the insurance company had a history of not paying, they went into court to get their premiums back. And there the court held that until a claim had been denied and until that rumor had played out, that in fact there was no injury in fact. And that doesn't seem right to me, because it seems to me that the value of the insurance policy on economic terms, I mean, what you could sell it for, for example, has to be influenced. When people buy insurance policies, they look at the claims coverage, and therefore if there is a pattern of not paying claims, it's going to be worth less just as a risk coverage device than if there's a more pattern of paying claims. So that doesn't seem right. But this seems to be ---- It doesn't seem to be an indication that as a risk coverage device this is any worse than if it had every stamp of Nevada propriety on it. That's right, Your Honor. We could debate the merits of IMPRESS, and I'd like to do it sometime when I have more than five minutes. But there you actually had an allegation of a reliance on a misrepresentation, and that was the basis for a claim. Here the only basis for a claim is an assertion that some statutory requirements were not satisfied in implementing the insurance plan. Well, suppose we knew, which is not alleged, that under Nevada law, if you don't comply with Nevada recording and so on requirements, that the insurance policy is unenforceable. Your Honor, we know the opposite in Nevada. And let me give you two citations that are not included in our briefs on that point. One is Leach v. Armstrong from the Nevada Supreme Court way back in 1930. Have you given these to the ---- I have not. I will submit them, Your Honor. Okay. And it would be 283P Pacific at 399. The Nevada Supreme Court stated that if a statute does not declare a contract made in violation of it to be void, and if it is not necessary to hold the contract void in order to accomplish the purpose of the statute, the inference is that it will be intended to be directory and not prohibitory of the contract. And more to the point, the Nevada Insurance Code at Chapter 687B.180 expressly states that a policy issued to any person in this state in violation of this code but otherwise binding on the insurer shall be valid and shall be construed as provided in this code. In other words, the insured will be protected by any shortcomings in the administration ---- administrative creation of the policy because it will be valid and it will be enforced consistent with the code. It sounds awfully key to the case to be bringing up an oral argument. Your Honor, honestly, the notion that this policy didn't exist or was invalid on its face wasn't clear to us until the reply. We had understood, frankly, the discussion to be that there was some, as the Court was asking, some sort of injury implicit in the alleged lack of a proper group sponsor to the plan. Once we saw the reply brief, we found these provisions. And I agree, Your Honor, and I apologize. If I may spend a moment on exclusive jurisdiction. It's well established and acknowledged here today that plaintiff's claims arise out of defendants' alleged failure to comply with Nevada's statutory requirements for the issuance of group life insurance. But in Allstate v. Thorpe, the Nevada Supreme Court squarely addressed the overall question of whether private rights of action can arise out of violations of the insurance code for anything other than the wrongful denial of a claim. And the Nevada Supreme Court's answer was no. The Supreme Court noted, and this is at page 994 of 170 Pacific III, that the Commissioner has express authority to enforce the insurance code, that the Commissioner has exclusive jurisdiction over the subject of trade practices in the business of insurance, and for those provisions, the Court cited directly to the Nevada insurance code. But, for example, if there were a contract dispute based on a policy and the validity of a provision under Nevada law were pertinent, presumably that could be litigated. But, Your Honor, it can be litigated in the context, for example, I believe it's Ippolito as a case that was cited in the reply brief of the plaintiffs. And that was a situation where a policy was improperly or was canceled. Without notice. And the argument, when a claim was made and denied, was that Missouri law controlled where notice wasn't required, while notice is required under Nevada law. And there, the court did, in evaluating that claim for the wrongful denial of benefits, look to the Nevada code and make an interpretation of that provision. The difference there being is that that arises after a claim is made and benefits are denied, and under 686A.310 sub 2 in the insurance code, the state legislature grants a private right of action to insureds for wrongful claims adjudication conduct. That's the one narrow area where there is a private right of action. But they're not really trying to bring a cause of action under the code. They're saying, we have a state cause of action, we have a separate cause of action, and the injury is the violation with law. So they're not actually trying to bring the private right of action. Well, Your Honor, in footnote 22 of Allstate v. Thorpe, the court specifically held that common law claims stemming from allegations related to the administrative provisions are also subject to the administrative scheme and the Nevada district of insurance or Nevada Department of Insurance's exclusive original jurisdiction. So common law claims that are rooted or used to set as a standard the insurance code are in fact and do in fact fall within the exclusive jurisdiction of the insurance commissioner. I thank the Court for its time. Thank you very much. Counsel? Your Honors, let me address two points very quickly. With regard to the ---- How about this provision of the insurance code that Merchand says that even if there's violations of the code, the policy is still valid? That was the provision I wanted to address. Here's the point I would make, is what policy are we enforcing? Is it the one Aetna said was in draft status that I provided to Your Honors that was issued to the public employee voluntary life plan, a nonexistent entity? What do you mean by nonexistent? You mean an entity that hadn't ---- It didn't exist. Well, there were people who thought it existed. Apparently, it hadn't filed its corporate papers or something? No. There was no such thing as the public employee voluntary life plan. Who did they send it to? They sent it to somebody. That's the problem. We don't know who they sent it to or anyone. Was it the agent? We have no evidence that this policy was ever issued to a legitimate group policyholder, which is a legal requirement for a group policyholder. But an illegitimate one. I'm sorry? But an illegitimate group policyholder. Or any policyholder. I mean, it was nonexistent. That's my ---- I don't know how else to phrase that. And then so you have, is that the contract or is the contract the one that was represented to have existed in Exhibit A to our complaint, which was a master group policy issued to PERS? Now, we know that never happened. So my point is, is that, yeah, this statute, that to take it in context, I would suggest if Aetna was an illegal insurance company, issued a insurance policy, a written document to the consumer, yes, the code says that becomes enforceable. But we have to take that in context. And with that point, I'd like to just close with one issue on THORP. THORP does not say that people can't bring breach of contract claims or claims like these for actions that stem from the violation of the law. THORP is limited in the context where the statute provides the remedy. And in that particular case, the doctors who were bringing the claim, the only basis they had to bring that claim stemmed from the statute. And the statute didn't provide the cause of action. The remedy was available from the commissioner's office. Here, we have no remedy. So THORP is inapplicable. And I would just leave that what the consumer buys and is an insurance policy. And when they don't get it, I would submit the damages, the premium. And with that, I'll leave it. If you have any questions, I'd be happy to answer. Okay, thank you. All right, we're going to take a short break. And we will be back to hear the last two cases.
judges: Goodwin, Berzon, Ikuta